J-A23029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.J.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.K.N., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 603 MDA 2022 |

Appeal from the Decree Entered March 25, 2022
In the Court of Common Pleas of York County Orphans' Court at No(s):
2022-0030a

| | | |
|---|---|---|
| IN THE INTEREST OF: J.J.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.K.N., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 604 MDA 2022 |

Appeal from the Decree Entered March 25, 2022
In the Court of Common Pleas of York County Orphans' Court at No(s):
2022-0031A

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                **FILED: NOVEMBER 15, 2022**

---

[*] Former Justice specially assigned to the Superior Court.

J.K.N., Jr. ("Father") appeals from the March 25, 2022 decrees that terminated involuntarily his parental rights to two of his children: Jai.J.N., born in March 2019, and Ja.J.N., born in October 2020.[1] We affirm.

We provide the following background. In December 2020, Mother was living with Jai.J.N. and Ja.J.N. in a domestic violence shelter in Ohio. Cuyahoga County Child Protective Services ("CCCPS") received a referral on December 10, 2020, after two-month-old Ja.J.N. presented to the hospital with a non-accidental and unexplained parietal skull fracture. Due to this injury and a concern for domestic violence between Mother and Father, CCCPS attempted to implement a safety plan. However, that plan never came to fruition because Mother relocated to York County, Pennsylvania without notifying CCCPS.

Shortly thereafter, on December 18, 2020, the York County Office of Children, Youth and Families ("CYF") received a referral for the family. CYF conducted a home visit on December 19, 2020. Father was not present as he was evading the police. CYF confirmed the skull fracture and determined that Mother was unemployed and unable to provide stable housing. Attempts at a safety plan were unsuccessful, so CYF filed an application for emergency

_____

[1] Father is also appealing a separate decree terminating his parental rights to a third child, Je.J.N., born in October 2021, at docket 744 MDA 2022. Since all three children have the same initials, we included enough additional letters from their first names for ease of identification within this memorandum. All three children share the same mother, D.K. ("Mother"). The orphans' court also terminated Mother's parental rights to the children, but she has not appealed.

protective custody and the children were placed into kinship care.[2] In January 2021, the children were adjudicated dependent. Father was not present at the adjudicatory hearing but was aware of their placement into kinship care as it was reported that he had visited the children there. Since Father's whereabouts were unknown, his only goal was to contact CYF "to discuss the expectations regarding services and supervised visitation if he wishes to be involved with his children[.]" CYF Exhibit 1 (Family Service Plan, 2/22/21, at 9); *see also id*. (Family Service Plan, 8/3/21); *id*. (Family Service Plan, 1/24/22).

The orphans' court issued permanency and status review orders in May, September, and October of 2021, finding in all of them that Father had not had any contact with the children or CYF, still had outstanding warrants, and had not made any progress towards alleviating the issues that led to the original placement. On January 27, 2022, the police searched the home where Mother and Father were then living. As a result, the Commonwealth filed multiple drug charges against Mother and Father.

Father's first contact with CYF was when he appeared at the next status review hearing, which was held on February 7, 2022. At that time, Father indicated that he was living with Mother and that he wanted to work towards

---

[2] Jai.J.N. and Ja.J.N. are no longer in kinship care. From kinship care, they were placed into a foster home together. On November 21 or 22, 2021, Jai.J.N. and Ja.J.N. joined Je.J.N. at the foster home where they currently reside. The current foster family is a pre-adoptive resource for all three children.

reunification. The court ordered him to obtain housing and employment, follow through with the criminal process, contact CYF to develop goals and services, and have regular visitation with the children. Upon contacting CYF, the agency advised Father that his goals were to contact and cooperate with CYF, maintain stable income and housing, cooperate with an in-home team for parenting and budgeting, attend visitation with the children consistently, participate in domestic violence treatment, and resolve his criminal charges.

On February 9, 2022, CYF filed petitions to terminate the parental rights of Father as to Jai.J.N. and Ja.J.N. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (4), (5), and (8).[3] The orphans' court held a hearing on these petitions on March 25, 2022.[4] CYF presented the testimony of CYF caseworker Samuel Richard and K.L., the current foster mother. Father testified on his own behalf.

Mr. Richard indicated that Father had made no progress on his goals and had not provided any documentation of employment. As Father had only made contact with CYF approximately one month before the termination hearing, Mr. Richard noted that besides attempting to initiate visitation, no services had yet been provided to Father. Mr. Richard additionally reported

---

[3] CYF also filed petitions to terminate Father's rights to Je.J.N. and Mother's parental rights to all three children. Following the hearing, the orphans' court denied those initial petitions as to Je.J.N.

[4] At the hearing, Laura L. Smith, Esquire, represented all three children as guardian *ad litem* ("GAL") and legal counsel. We note with displeasure that Attorney Smith did not file a brief with this Court on behalf of the children.

that Father had not had any supervised visitation with the Jai.J.N. or Ja.J.N. during the life of the case.

At the time of the hearing, Father was incarcerated. He did not allege that his absence rendered him unaware of his children's placement into care. Instead, he claimed to have had contact with the children during their partially supervised visitation with Mother in May and June of 2021. He acknowledged that he had not seen Jai.J.N. or Ja.J.N. since Mother's visits reverted to fully supervised in July 2021. Outside these unsanctioned visits, there is no evidence of contact between Father and Jai.J.N. or Ja.J.N. since the original placement.

At the conclusion of the hearing, the orphans' court issued decrees terminating Father's parental rights as to Jai.J.N. and Ja.J.N. pursuant to § 2511(a)(1). Father filed timely notices of appeal and concise statements pursuant to Pa.R.A.P. 1925(a)(2). The orphans' court filed responsive Rule 1925(a) opinions.[5] This Court consolidated the appeals *sua sponte*.[6]

Father presents the following question for our consideration: "Did the Lower Court abuse its discretion and err as a matter of law in finding that the Agency met its burden to terminate Father's parental rights under 23 Pa.C.S.A. Section 2511(a)(1), (2), (5), (8) and 2511(b)?" Father's brief at 5.

---

[5] Since the opinions are substantially the same, we will cite solely to the opinion for Jai.J.N. but apply it to both children.

[6] Father sought to consolidate these cases with the appeal regarding Je.J.N. This Court denied that motion.

We begin with our standard of review for matters involving involuntary termination of parental rights:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized [the appellate court's] deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (cleaned up). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court

determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

Father argues that CYF failed to establish by clear and convincing evidence the statutory grounds for termination of his parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). **See** Father's brief at 13. We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (cleaned up). Termination is proper when the moving party proves grounds for termination under any subsection of § 2511(a), as well as § 2511(b). *T.B.B.*, *supra* at 395. To affirm, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, the orphans' court only made findings as to § 2511(a)(1) and (b). Therefore, that is where we focus our analysis. These subsections provide as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Our Supreme Court set forth the proper inquiry under § 2511(a)(1) as

follows:

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998) (citation

omitted). As it relates to timing, this Court further explained,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light

- 8 -

of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted). Critically, though, the court is prohibited from considering any efforts made by a parent to remedy conditions **after** the filing of the termination petition. 23 Pa.C.S. § 2511(b).

The orphans' court found that Father had not presented any credible evidence that he had made any efforts to perform parental duties in the six months leading up to the filing of the petition. Orphans' Court Opinion (Jai.J.N.), 4/25/22, at 2. Specifically,

> Father acknowledged not having any contact with his children, the agency or the court due to being "on the run" from outstanding warrants. The child[ren] remain[ in foster care]. Father failed to pay any support for the child[ren] over the life of the underlying dependency action. He failed to attend medical appointments or early intervention therapies . . .. He had not even inquired about the care and welfare of the child[ren] until February, 2022. All parental duties are being performed by the foster parents to whom the children look to as their mother and father.

*Id*. (footnote omitted); *see also* N.T., 3/25/22, at 93 ("The fact that the children were in placement and [Father] failed to make any efforts to maintain regular and ongoing contact we find is a settled purpose to relinquish his parental rights.").

Father argues that termination under § 2511(a)(1) is improper because he was present during some of Mother's partially supervised visits in "May and/or June of 2021" and he provided gifts to the children. *See* Father's brief at 16. He contends that there were no established goals for him to comply

with and that he had begun to address his criminal issues, drug and alcohol concerns, mental health concerns, and employment after he contacted CYF in February 2022. *Id*. at 16-17.

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa.Super. 2002). In this vein, "[a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id*. at 340 (citation omitted). As it relates to § 2511(a)(1), "[a] parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003) (citation omitted). "This court has repeatedly recognized that parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs." *Id*. (cleaned up).

Even if Father was present during some of Mother's partially supervised visits in May or June of 2021, those preceded the relevant six-month period for § 2511(a) analysis. Moreover, his eleventh-hour attempt to initiate services after avoiding CYF for over one year is woefully insufficient to overcome his absence from the children's lives and non-compliance with the

sole service requirement of contacting CYF so that CYF could determine what services were necessary for Father to reunite with Jai.J.N. and Ja.J.N. The record supports the conclusion of the orphans' court that Father failed to assume parental duties for Jai.J.N. and Ja.J.N. for at least six months prior to the filing of the termination petition. He prioritized avoiding his legal troubles over being a parent to Jai.J.N. and Ja.J.N. In doing so, he demonstrated his desire to relinquish his parental claim to the children and refused and failed to perform any parental duties. Accordingly, the orphans' court did not err in terminating his parental rights as to Jai.J.N. and J.N. pursuant to § 2511(a)(1).

Finally, we consider whether the orphans' court committed an error of law or abuse of discretion pursuant to § 2511(b). As explained above, § 2511(b) focuses on the needs and welfare of the child, which includes an analysis of any emotional bond that the children may have with Father and the effect of severing that bond. **L.M.**, **supra** at 511. The key questions when conducting this analysis are whether the bond is necessary and beneficial and whether severance of the bond will cause the child extreme emotional consequences. **In re Adoption of J.N.M.**, 177 A.3d 937, 944 (Pa.Super. 2018) (quoting **In re E.M.**, 620 A.2d 481, 484–85 (Pa. 1993)). It is important to recognize that the existence of a bond, while significant, is only one of many factors courts should consider when addressing § 2511(b). **In re Adoption of C.D.R.**, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting **In re N.A.M.**, 33 A.3d 95, 103 (Pa.Super. 2011)). Other factors include "the

safety needs of the child, and . . . the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*.

Father "acknowledge[s] that there has been little evidence of the relationship and bond between Father and the children. It was Father's hope that once he began addressing his issues, which he began to do, this would change." Father's brief at 23.

As a general matter, Pennsylvania does not require the orphans' court to enlist a formal bonding evaluation or base its needs and welfare analysis upon expert testimony. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2011). "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, *supra*, at 268. In weighing the bond considerations pursuant to § 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*. A court cannot "toll the well-being and permanency" of a child indefinitely in the hope that a parent "will summon the ability to handle the responsibilities of parenting." *In re C.L.G.*, 956 A.2d 999, 1007 (Pa.Super. 2008) (*en banc*) (citation omitted).

In relation to § 2511(b), the trial court concluded that there would be "no adverse [e]ffect] on the child[ren] to terminate Father's parental rights"

because there was "no evidence of a bond" between Father and Jai.J.N. or Ja.J.N. and it was in their best interest "to become free for adoption[.]" Orphans' Court Opinion (Jai.J.N.), 4/25/22, at 3. At the hearing, the orphans' court explained further, as follows:

> Although [F]ather believes that [Jai.J.N.] would recognize him as his father, there is no evidence that he would or has any recognition.
>
> Again, given the age of the children and the lack of contact by [F]ather within the six-month period, the [c]ourt finds that all intangibles, such as love, comfort, security, and stability, have been met wholly by others.
>
> Father has not during the period of time necessary addressed the developmental, physical, emotional needs and welfare of the children, and, therefore, we do find that [s]ubsection 2511(b) is fulfilled.
>
> We note that the [c]ourt is unable to consider evidence by a parent to remedy conditions that are initiated subsequent to giving notice of the filing of the petition.

N.T., 3/25/22, at 95.

As noted, K.L. and her husband are a pre-adoptive resource for Jai.J.N. and Ja.J.N. Since coming into their care, Jai.J.N. has entered Early Intervention for behavioral issues and has made progress. *Id*. at 55-56. Father has not been involved with those Early Intervention services, nor has he attended any medical appointments for either child. *Id*. at 56.

At the termination hearing, Mr. Richard testified that "due to lack of contact with the father, I guess I can't make an assessment" as to whether Jai.J.N. or Ja.J.N. views him as a parental figure. *Id*. at 24-25. However,

Jai.J.N. refers to the foster parents as "[s]ome variation of mommy and daddy." *Id*. at 25; *see also id*. at 60. Moreover, K.L. testified that Jai.J.N. has not inquired about Father. *Id*. at 60. Regarding Ja.J.N., who was pre-verbal at the time of the hearing, K.L. stated that he calls the foster father "dada." *Id*. at 60. Father has not had any contact with the foster parents regarding the children. *Id*. at 63-64.

As to the effects of termination on the children, Mr. Richard testified that there may be some confusion for Jai.J.N. in the short-term, but "there would not be a long-term negative effect" on the children. *Id*. at 32.

The certified record demonstrates that Jai.J.N. and Ja.J.N. are best served by terminating the parental rights of Father in anticipation of adoption by K.L. and her husband. There is no evidence of a bond between Father and the children and, as noted, Father has not performed parental duties during any significant period of time in the young children's lives. Rather, it is the foster parents who have provided a stable, loving environment that satisfies each child's developmental, physical, and emotional needs and welfare. Moreover, the record bears out that each child has formed a healthy bond with the foster parents. As such, the record supports the assessment of the orphans' court that termination is in the best interests of Jai.J.N. and Ja.J.N.

Based on the foregoing, we affirm the decrees terminating Father's parental rights.

Decrees affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/15/2022